* * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured with Key Risk Management Services, Inc., as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury by accident on or about August 2, 2000. Claims supervisor Debbie Royce submitted an I.C. Form 60 on or about August 23, 2000 to accept compensability of this claim.
5. Based upon the I.C. Form 22, plaintiff's average weekly wage was $368.97, which was sufficient to yield a weekly compensation rate of $245.93.
6. Plaintiff has been out of work since April 29, 2002 to the present.
7. The parties stipulated 354 pages of medical records into evidence.
8. The issues for determination by the Commission are whether plaintiff's back condition for which she received treatment after April 2002 was caused, aggravated, or exacerbated by the August 2, 2000 work-related injury and, if so, to what additional benefits is plaintiff entitled.
 * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. At the time of the Deputy Commissioner's hearing, plaintiff was 49 years old and was employed by defendant-employer as a Trainer I. Her duties included assisting residents with bathing, meals, and basic needs. The facility housed mentally handicapped residents who were age 40 and older.
2. On August 2, 2000, a co-worker called for assistance at one of the residence cottages and plaintiff responded. She saw a male resident restraining the co-worker. As plaintiff approached, the male resident grabbed plaintiff by the throat and threw her over a chair, landing on top of her. The resident was over six feet tall and weighed in excess of 200 pounds. The resident continued to hold plaintiff's throat in a choking manner. After two male attendants intervened, plaintiff was unable to get up from the floor. She had low back and arm pain.
3. Plaintiff was treated at Grace Hospital emergency room for pain in the thoracic spine and right arm pain. She was diagnosed with a right forearm sprain and a back strain.
4. Following the incident, plaintiff attended physical therapy for approximately one month.
5. Defendant filed an I.C. Form 60 admitting the compensability of plaintiff's claim on August 23, 2000. On November 3, 2000, defendant submitted an I.C. Form 28T, which indicated plaintiff's temporary total disability benefits were terminated on August 15, 2000 upon her return to work at the same or greater wages.
6. Neurosurgeon Dr. Gregory Rosenfeld began treating plaintiff on September 28, 2000 for complaints of low back pain, bilateral leg discomfort and right thigh numbness. An MRI showed no disc herniation, spinal stenosis or facet problem. The test did reveal mild degenerative disc changes at L3-4 and L4-5. Dr. Rosenfeld ordered conservative therapy and work conditioning. Due to a death in her family, plaintiff did not follow-up with Dr. Rosenfeld until *Page 4 
July 5, 2001, at which time Dr. Rosenfeld found normal motor exam, normal gait pattern, and non-focal neurologic exam. After the servicing agent denied a comprehensive pain management referral, Dr. Rosenfeld referred plaintiff to physical medicine and rehabilitation specialist Dr. Thomas M. Ray.
7. On September 5, 2001, Dr. Ray began treating plaintiff. Plaintiff complained of right-sided back pain, right thigh numbess and lack of sensation. On exam, she was very tight in the lumbar paraspinal muscles and in the hamstring muscles. She was also limited in her ability to flex forward. Dr. Ray did not order any additional testing but relied on the August 20, 2000 MRI done previously. Dr. Ray diagnosed plaintiff with late effects of lumbar sprain and strain secondary to the assault and a history of migraine headaches. He saw no radiculitis but found that plaintiff had chronic mechanical low back pain. Dr. Ray recommended physical therapy and prescribed Ultram.
8. Plaintiff returned to Dr. Ray on October 10, 2001, at which time her range of motions was mildly restricted. However, Dr. Ray observed plaintiff exhibited fairly fluid movements and appeared to be fairly comfortable sitting. She was also able to get on and off the exam table and walked with a normal gait. Both Dr. Ray and the therapist found plaintiff was very deconditioned.
9. When Dr. Ray treated plaintiff on October 22, 2001, plaintiff reported that she was still working seven days on and seven days off. She had no improvement in her back and right flank pain, which was constant but worse on the days she worked. Dr. Ray did two trigger point injections at this visit.
10. Plaintiff had been working light duty but, due to the required lifting, voluntarily terminated her employment with defendant-employer in October 2001. After leaving *Page 5 
defendant-employer, plaintiff began working at Young Street Group Home, where she worked nine hours per day and 12 hours on the weekend. She worked one week on and had one week off, and her duties included preparing meals and assisting residents with dressing. The job duties required no lifting. She worked 40 hours per week and earned $8.25 per hour. Plaintiff stopped working at the Young Group Home after her April 29, 2002 appointment with her family physician, Dr. Larry E. Smith.
11. Dr. Ray last saw plaintiff on November 28, 2001, at which time she complained of continuing episodic muscle spasms in her right lower lumbar spine and pain radiating to the back of the knee. On exam, Dr. Ray did not identify any trigger points and found no change in the motor exam. Dr. Ray stated that plaintiff had reached maximum medical improvement from the back strain. He released her and rated her as retaining a two percent permanent partial impairment to the back due to the compensable injury. He recommended weight loss, provided prescriptions for Ultram and Zanaflex, and told plaintiff to return to him as needed. Dr. Ray also told plaintiff to return to her family doctor for ongoing pain management.
12. Between November 28, 2001 and April 29, 2002, plaintiff did not seek any treatment for her back.
13. On April 29, 2002, plaintiff sought treatment from her family physician, Dr. Smith, for back pain that began three days prior, as well as pain laterally down her right side and posteriorly to the bottom of her foot, which started suddenly with no trigger or trauma. On examination, Dr. Smith found significant positive straight leg raising on the right. He prescribed Percocet for pain. Plaintiff did not inform Dr. Smith of the assault in 2000 or of Dr. Ray's treatment. *Page 6 
14. On May 8, 2002, after plaintiff returned to Dr. Smith with complaints of burning in her thigh, he ordered an MRI. The May 17, 2002 MRI revealed a mild left posterior lateral disc herniation at L4-5 with encroachment of the left foraminal area. Dr. Smith referred plaintiff to neurosurgeon Dr. Richard P. Greenberg. Dr. Smith has not treated plaintiff since January 11, 2003. Dr. Smith testified that it was his opinion to a reasonable degree of medical certainty that it was "entirely possible" and "probable" that the herniated disc was causally related to the assault on August 2, 2000.
15. On May 22, 2002, Dr. Greenberg examined plaintiff for complaints of pain in her back and right leg and intermittent bilateral leg numbness and loss of feeling in her right foot. She related the history of the assault at work and treatment by Dr. Ray, which included therapy and injections. Plaintiff reported she never improved and got no relief from her pain as the result of Dr. Ray's treatment. She told Dr. Greenberg that her pain was so severe that she had been unable to work since the end of April 2002. Dr. Greenberg prescribed Valium and Percocet for pain. He also ordered a myelogram.
16. On June 20, 2002, Dr. Greenberg performed a microdiscectomy as outpatient surgery at Gaston Memorial Hospital. Although plaintiff had some initial improvement, she did not gain relief from her pain due to the surgery.
17. Dr. Greenberg ordered a L4-5 nerve block on September 23, 2002 which provided plaintiff temporary relief. After an MRI revealed a recurrent disc herniation, Dr. Greenberg performed a second surgery on October 17, 2002. Post-operatively, he referred plaintiff to Dr. Henry O'Coney for pain management. Dr. Greenberg also ordered physical therapy and noted concern about the large amount of pain medication which plaintiff was taking on November 18, 2002. *Page 7 
18. Dr. Smith sent plaintiff back to Dr. Greenberg and, on January 6, 2003, plaintiff told Dr. Greenberg that physical therapy made her pain worse. In November of 2003, she reported low back pain and radiating pain, worse in her left leg than the right, as well as numbness, tingling and weakness in her legs. She was no longer taking pain medications. An MRI in December of 2003 indicated no recurrent disc problem, and an EMG was reported as normal.
19. As of the Deputy Commissioner's hearing, Dr. Greenberg had not released plaintiff to return to work. Plaintiff had constant pain in her low back and leg, had difficulty sleeping and doing routine daily activities and felt that she was unable to do any work.
20. At his deposition, Dr. Greenberg stated that his opinion was that plaintiff's original injury from the assault was the likely cause of her later back problems and was the reason she needed treatment from that time forward. He further stated that the assault could have aggravated plaintiff's arthritic condition to the point of contributing to the disc problem. Dr. Greenberg assigned a 20% permanent partial disability rating to plaintiff's back.
21. After reviewing the May 17, 2002 MRI, Dr. Ray testified at his deposition that it was a possibility that plaintiff's work-related trauma could have resulted in the degenerative changes in the L4, L5 and S1 discs shown on the May 17, 2002 MRI. He further stated his opinion that the work-related trauma and then the herniated disc in the same area showed a possible causal link. However, Dr. Ray noted that plaintiff did not voice any radicular symptoms consistent with a disc herniation throughout her course of treatment with Dr. Ray and therefore he believed that plaintiff's disc desiccation was most likely due to aging.
22. The Full Commission gives greater weight to the causation opinions of Drs. Greenberg and Smith than to Dr. Ray and finds by the greater weight of the evidence that *Page 8 
plaintiff's back condition after April 29, 2002 was causally related to her compensable injury by accident on August 2, 2000.
23. As the result of the compensable injury by accident, plaintiff has a 20% permanent partial impairment to her back.
24. As the result of the compensable injury by accident, plaintiff was disabled from any employment beginning April 29, 2002 and continuing at least through January 5, 2004, the date of the issuance of the Deputy Commissioner's Opinion and Award. The record does not contain sufficient evidence upon which to determine whether plaintiff was disabled after January 5, 2004.
 * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 2, 2000, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Defendant admitted the compensability of plaintiff's injury by accident on August 2, 2000 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result *Page 9 
of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. PerdueFarms., Inc., supra.
4. In the instant case, plaintiff met her initial burden to show that she was disabled at least through the date of the Deputy Commissioner's Opinion and Award. The medical evidence and plaintiff's credible testimony that her pain is so severe that she is unable to work establish that plaintiff was disabled from any employment due to her compensable injury and resulting back pain and surgeries. Knight v. Wal-Mart,149 N.C. App. 1, 562 S.E.2d 434 (2002), aff'd per curiam, 357 N.C. 44,577 S.E.2d 620 (2003).
5. Defendant has not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental and vocational limitations. Demery v. Perdue Farms, Inc., supra.
6. As a result of the compensable injury by accident and resulting pain, plaintiff was totally disabled and is entitled to total disability compensation at the rate of $245.93 per week *Page 10 
beginning April 29, 2002 and continuing at least through January 5, 2004. N.C. Gen. Stat. § 97-29.
7. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283,286, disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Sneadv. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendants to prove that the medical treatment is not directly related to the compensable injury. Id. The Court of Appeals has also held that an employer's payment of compensation pursuant to a Form 60, as in the case before us, is an award of the Commission and that the Parsons presumption applies. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. review improvidentlyallowed, ___ N.C. ___, 634 S.E.2d 887 (2006).
8. In the case at bar, the greater weight of the evidence establishes that plaintiff's back condition since April 29, 2002 is directly and causally related to her injury by accident on August 2, 2000. TheParsons presumption applies and defendant failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Parsons v. Pantry, Inc., supra.
9. As the result of the compensable injury by accident, plaintiff has a 20% permanent partial disability to her back. N.C. Gen. Stat. §97-31(23). *Page 11 
10. Plaintiff is entitled to have defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. The approved medical expenses include the treatment by Drs. Smith and Greenberg, who were referrals from an authorized treating physician. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendant shall pay total disability compensation at the rate of $245.93 per week beginning April 29, 2000 and continuing until January 5, 2004. This amount has accrued and shall be paid in a lump sum.
2. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. The approved medical expenses include the treatment of Drs. Smith and Greenberg.
3. In that the record contains insufficient evidence concerning the extent of plaintiff's disability, if any, after January 5, 2004, this issue is RESERVED for future determination. The parties may hereafter stipulate to the extent of continuing disability or either party may request an evidentiary hearing before a Deputy Commissioner on this issue.
4. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. *Page 12 
This 15th day of May, 2007.
 S/___________________
LAURA KRANIFELD MAVRETIC
COMMISSIONER
CONCURRING:
S/________________ CHRISTOPHER SCOTT. COMMISSIONER.
S/________________ PAMELA T. YOUNG. COMMISSIONER. *Page 1